ORIGINAL

Approved: _____
Margery B. Feinzig
Assistant U.S. Attorney

Before:   HONORABLE PAUL E. DAVISON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :   **SEALED COMPLAINT**

        - v. -                      :   Violations of
                                        18 U.S.C. §§ 1343, 1347,
SPYROS PANOS,                       :   and 1028A

                Defendant.          :   COUNTY OF OFFENSE:
                                        Dutchess

                                        18 m 2963
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

         DANIEL J. GABEL, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service (the "USPIS"), and charges as follows:

COUNT ONE
(Wire Fraud)

         1.   From in or about September 2013 through in or about October 2017, in the Southern District of New York and elsewhere, SPYROS PANOS, the defendant, did willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, SPYROS PANOS, an unlicensed physician, induced companies to pay him over $860,000 in fees for conducting peer reviews of patient files in connection with Workers Compensation claims by assuming the identity of a licensed physician, falsely representing himself to be that physician, reviewing files, and submitting reports to the peer review companies, by, among other things, logging onto a portal of one of the review companies, whose server was located in

Georgia, from a computer in Hopewell Junction, New York, on numerous occasions from on or about February 26, 2017 through on or about April 21, 2017.

(Title 18, United States Code, Section 1343.)

## COUNT TWO
(Health Care Fraud)

2. From in or about September 2013 through in or about October 2017, in the Southern District of New York and elsewhere, SPYROS PANOS, the defendant, did knowingly and willfully, execute and attempt to execute a scheme and artifice to defraud a health care benefit program and to obtain money and property owned by, or under the custody and control of a health care benefit program, by means of false and fraudulent pretenses, representations and promises, money and property owned by, or under the custody and control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, and services, to wit, SPYROS PANOS, an unlicensed physician, induced companies to pay him over $860,000 in fees for conducting peer reviews of patient files in connection with Workers Compensation claims by assuming the identity of a licensed physician, falsely representing himself to be that physician, reviewing files, and submitting reports to the peer review companies from Hopewell Junction, New York.

(Title 18, United States Code, Section 1347.)

## COUNT THREE
(Aggravated Identity Theft)

3. From in or about September 2013 through in or about October 2017, in the Southern District of New York and elsewhere, SPYROS PANOS, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, the defendant possessed, used, and transferred the personal identification information of another person in connection with the commission of health care fraud and wire fraud, as charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Section 1028A.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am an Inspector with the USPIS. I have been a law enforcement officer since September 2017. Since then, I have participated in fraud investigations. I have been personally involved in the investigation of this matter. I base this affidavit on my training and experience, my personal knowledge as well as my conversations with other law enforcement officers, other individuals, and my examination of various reports and records.

5. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

6. Based on public records, conversations with other federal investigators, and records of the United States Bureau of Prisons ("BOP"), I have learned the following:

(a) SPYROS PANOS, the defendant, was an orthopedic surgeon practicing in Dutchess County and residing in Hopewell Junction (the "PANOS Residence"). In or about August 2013, PANOS surrendered his license to practice medicine and on or about October 31, 2013, he pled guilty in United States District Court for the Southern District of New York, to an Information charging him with health care fraud, in violation of Title 18, United States Code, Section 1347 (the "Health Care Fraud Charge").

(b) On or about March 7, 2014, PANOS was sentenced principally to a fifty-four month term of imprisonment and two years of supervised release. A month later, on or about April 2, 2014, PANOS surrendered to serve his sentence.

(c) On or about September 16, 2016, PANOS was released to a halfway house and about a month later, on or about October 21, 2016, he was released to home confinement. On or about March 13, 2017, PANOS began his two-year term of supervised release.

7. Another agent and I have spoken with the United States Probation Officer (the "PO") currently supervising SPYROS PANOS, the defendant, during his term of supervised release, and I understand the following:

(a) PANOS has been residing at the PANOS Residence with his family since he was released from a halfway house to home confinement on October 21, 2016.

(b) PANOS has not reported any employment to the Probation Office.

(c) Since commencing his term of supervised release, PANOS has left New York State once, to go to New Jersey.

8. Based on information provided by officers of the New York State Office of the Workers' Compensation Fraud Inspector General (the "WCFIG Officers"), I understand the following:

(a) In connection with medical treatment relating to Workers' Compensation claims, a peer review may be conducted when a treating physician requests a variance in treatment. The doctor performing the peer review is a licensed independent doctor who reviews the patient file but does not examine the patient and writes a report opining whether the variance is appropriate.

(b) There are companies that supply doctors who conduct peer reviews in connection with Workers' Compensation claims. Prior to being assigned to perform peer reviews, the doctor must establish that he/she has the proper credentials. To that end, the doctor must provide the following information to the peer review companies, among other things: the schools from which the doctor earned his/or degrees and other educational credentials, the states in which he/she is licensed to practice medicine, and other pedigree and background information such as birth date and social security number.

### The Fraud and Identity Theft Schemes

9. According to records of the New York State Department of State, in or about December 2013 (which was after PANOS pled guilty on October 31, 2013 and before he surrendered to serve his sentence on April 2, 2014) a company called Excel O

4

LLC (hereafter "Excel O"), at an address in Brooklyn (the "Brooklyn Address"), was formed. The registered agent for Excel O is an individual who, I understand, is PANOS' family member and is not a licensed physician ("Family Member-1"). According to a database used by law enforcement, the Brooklyn Address is a building owned by an individual who, I believe, is another PANOS family member ("Family Member-2") and is not a licensed physician.

10. According to records from five companies that supply doctors who conduct peer reviews for Workers' Compensation claims (collectively, the "Five Review Companies"), an orthopedic surgeon purporting to be practicing medicine at "Excel Orthopedics" performed peer reviews for each company (the "Excel Doctor"). The same credentialing information for the Excel Doctor was submitted to the Five Review Companies. The Five Review Companies paid for the Excel Doctor's peer review services by mailing checks, made out to Excel O LLC or Excel Orthopedics, to the Brooklyn Address.

11. According to the Five Review Companies' records, the Excel Doctor communicated with them using the same email address (the "Email Account"). According to Google records, the Email Account is subscribed to the Excel Doctor and was created on or about September 13, 2013, approximately one month before SPYROS PANOS, the defendant, pled guilty to the Health Care Fraud Charge. In addition, from at least August 7, 2017 through January 18, 2018, two IP addresses were associated with all the emails sent or received using the Email Account. According to records of Optimum, a cable and internet provider, from at least in or about February 26, 2017 through in or about February 13, 2018, those two IP addresses were assigned to the PANOS Residence.

12. Based on my interviews of employees from two of the Review Companies ("Review Company-1" and "Review Company-2"), I understand that the procedure doctors follow when working with these companies is as follows: they submit credentialing information and other employment records to the company by fax, mail or email. Thereafter, they communicate with the companies, generally, by phone, email and by logging onto a secure portal. The secure portal captures the doctors' IP addresses.

13. According to an IT employee from Review Company-1, he/she examined Review Company-1's records and informed me that on or about October 10, 2017, the Excel Doctor logged onto Review Company-1's portal using a particular IP address, which,

5

based on my review of Optimum records, was one of the IP addresses assigned to PANOS' residence. IT Employee-1 also informed me that Review Company-1's server is located in the northwest quadrant of the United States.

14. According to records provided by Review Company-2, as well as Google and Optimum, on numerous occasions between on or about February 26, 2017 and on or about April 21, 2017, the Excel Doctor logged onto Review Company-2's secure portal using a computer at an IP address assigned to PANOS' residence. According to an employee of Review Company-2, Review Company-2's server is located in Georgia.

15. Based on a review of Hudson Valley Federal Credit Union ("HVFCU") records, I have learned the following:

(a) On or about December 21, 2013, approximately six months before SPYROS PANOS, the defendant, surrendered to serve his prison sentence, an account in the name of Excel O was opened at HVFCU ("Excel O Account-1"). Family Member-1 is the only name associated with the account. Between the time Excel O Account-1 was opened until about three months after PANOS surrendered to serve his sentence for the Health Care Fraud Charge, checks totaling over $239,000, issued by Review Company-1, another of the five Review Companies, and a sixth review company, made out to Excel O LLC or Excel Orthopedics, were deposited into Excel O Account-1. No further checks from peer review companies were deposited into Excel O Account-1.

(b) On or about December 2, 2016, approximately two months after SPYROS PANOS, the defendant, was released from prison to home confinement, a second account in the name of Excel O was opened at HVFCU ("Excel O Account-2"). Again, Family Member-1 is the only name associated with the account. Between in or about December 2016 and in or about October 2017, over $636,500 in checks issued by the Five Review Companies, made out to Excel O LLC or Excel Orthopedics, were deposited into Excel O Account-2.

(c) After the Review Companies' checks were deposited into these accounts, money was removed through withdrawals of cash or checks that were made out to Family Member-1, drawn on the accounts, and then deposited into a third HVFCU account (the "Family Account"). The Family Account is in the name of Family Member-1 and two other members of PANOS' family ("Family Member-3" and "Family Member-4"), neither of whom is a licensed physician. From the Family Account, some

money was withdrawn and over $100,000 was transferred to bank accounts in Hong Kong.

16. Based on a review of HVFCU records and surveillance video from various HVFCU branches in Dutchess County, it appears that, among other things, Family Member-3 went to HVFCU and deposited the Review Companies' checks into Excel O Account-2, withdrew money from that account, and transferred money into the Family Account. In addition, on several occasions in September and October of 2017, SPYROS PANOS, the defendant, and Family Member-1 went to HVFCU and wire transferred money out of the Family Account.

17. I have interviewed the doctor whose credentialing information was submitted to the review companies and represented to be the Excel Doctor's credentials ("Doctor-1"). Doctor-1 informed me that he/she is a licensed physician who is an orthopedic surgeon employed by a practice in Westchester County, not Excel Orthopedics in Brooklyn. Doctor-1 advised, among other things, that he/she did not: submit his/her credentialing information to the six Review Companies; conduct any peer reviews; authorize SPYROS PANOS, the defendant, or anyone else to use his/her credentialing information to conduct peer reviews; or, receive the fees paid by the six Review Companies for the services he/she was falsely represented to have performed. According to Doctor-1, he/she previously worked with PANOS and the last time Doctor-1 spoke with PANOS was about a year ago.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of SPYROS PANOS, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

DANIEL J. GABEL
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
9 day of April, 2018

HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK